UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY DARALL COLE,                          Case No. 11-11936

        Plaintiff,                          Sean F. Cox
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge
        Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On May 2, 2011, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for disability insurance and

supplemental security Income benefits.  (Dkt. 2).  This matter is before the Court

on cross-motions for summary judgment.  (Dkt. 9, 12).

### B.   Administrative Proceedings

Plaintiff first applied for disability insurance benefits in 1999.  In a decision

dated August 28, 2001, Administrative Law Judge Robert D. Stalker granted benefits in part, finding plaintiff disabled from June 4, 1998 through June 19, 2001, but not thereafter.  (Dkt. 7-3, Pg ID 102).  Plaintiff filed the instant claims on January 9, 2006, alleging that he became unable to work on June 18, 1999. (Dkt. 7-5, Pg ID 156).  The claim was initially disapproved by the Commissioner on October 16, 2006.  (Dkt. 7-4, Pg ID 113-116).  Plaintiff requested a hearing and on January 15, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Ayrie Moore, who considered the case *de novo*.  In a decision dated May 12, 2009, the ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 46-61).  Plaintiff requested a review of this decision on May 21, 2009.  (Dkt. 7-2, Pg ID 43).  On February 24, 2011, after the review of the ALJ's decision and an additional exhibit (Dkt. 7-2, Pg ID 30), the Appeals Council found that plaintiff was disabled since May 12, 2009, but adopted the remainder of the ALJ's decision.  (Dkt. 7-2, Pg ID 22-30).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings and Appeals Council Decision

Plaintiff was 49 years of age at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 67).  Plaintiff's relevant work history included approximately 21 years as an assembly line worker.  (Dkt. 7-6, Pg ID 194).  In denying plaintiff's claims, defendant Commissioner considered right shoulder-neck injury, lower back injury, and carpal tunnel as possible bases of disability.  (Dkt. 7-6, Pg ID 193).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since June 18, 1999.  (Dkt. 7-2, Pg ID 51).  At step two, the ALJ found that plaintiff's carpal tunnel syndrome, osteoarthritis in his knees, back, and right shoulder, gout, and affective disorder were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 52).  At step four, the ALJ found that plaintiff could not perform his previous work as a production assembler.  (Dkt. 7-2, Pg ID 59).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 7-2, Pg ID 59-60).

On review by the Appeals Council, the ALJ's decision was modified to find

that claimant was disabled on May 12, 2009.  (Dkt. 7-2, Pg ID 26).  The Appeals

Council noted that plaintiff turned 50 years old just over two months after the

hearing decision was issued.  The regulations provided that the age categories will

not be applied "mechanically" in a "borderline" situation.  The ALJ's decision did

not indicate application of a borderline age situation.  For individuals with no

transferable skills, who have an exertional capacity for sedentary work, and who

are in the category of "closing approaching advanced age," Rule 201.14 of the

Medical-Vocational guidelines directs a conclusion of "disabled" at age 50.  (Dkt.

7-2, Pg ID 27).  Thus, the Appeals Council found that, given plaintiff's RFC and

his age, he was "disabled" using Rule 201.14 as a framework as of the date of the

ALJ's decision.  *Id*.  The remainder of the ALJ's findings were adopted and

approved by the Appeals Council as the final decision of the Commissioner.  (Dkt.

7-2, Pg ID 28).

        B.      Plaintiff's Claims of Error

        Plaintiff first argues that the ALJ erred by not including all of plaintiff's

impairments in the hypothetical question posed to the vocational expert.

According to plaintiff, the ALJ places no limitations whatsoever on Mr. Cole with

respect to his "moderate difficulties in maintaining social functioning."  (Tr. 32,

33).  And, the ALJ's limitation to "only simple work tasks" is insufficient and

does not adequately address the "moderate difficulty in maintaining concentration,

persistence, or pace." (Tr. 32, 33). Because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects, plaintiff argues that the VE's testimony at the hearing should not constitute substantial evidence. According to plaintiff, the ALJ did not properly evaluate his impairments in the hypothetical question and, therefore, the hypothetical is flawed. In the RFC, the ALJ states "based on [Mr. Cole's] mental impairment, [he] is capable of performing only simple work tasks." (Tr. 33). The ALJ opined "based on [Mr. Cole's] testimony and the medical evidence, the undersigned concludes that [he] has . . . moderate difficulties in maintaining social functioning, and moderate difficulty maintaining concentration, persistence, or pace." (Tr. 32). However, plaintiff asserts that the moderate limitation in concentration, persistence and pace is not adequately addressed in the hypothetical and, therefore, the hypothetical is flawed and the case should be remanded for several reasons.

Plaintiff compares this case to *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996), in which the ALJ filled out a PRTF that contained a finding where the claimant "often" suffered from deficiencies in concentration, but did not include that fact in the hypothetical put to the VE. And, plaintiff points to *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001), in which claimant argued that the ALJ did not accurately characterize his mental impairment in the hypothetical question because "the ALJ should have added the instruction that the claimant 'often'

suffers deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, as the ALJ indicated in the PRT." *Id.*, 307 F.3d at 379. The hypothetical question in *Smith* included the following limitations: "jobs that are routine and low stress, and do not involve intense interpersonal confrontations [or] high quotas . . .". *Id*. at 378. The Court in *Smith* found "that the ALJ accurately characterized [the claimant's] impairments in his hypothetical to the vocational expert." *Id*., 307 F.3d at 379. According to plaintiff, no such restrictions were placed in the hypothetical in the present case.

Plaintiff acknowledges that, while SSR 96-8 indicates that an assessment of the "B" criteria is not in and of itself the same as an RFC assessment, there is nothing in this language to suggest that an ALJ's factual determination at step three, which is summarized on the PRTF, "can simply be disregarded at step five." Rather, at step five, the ALJ is required to flesh out his broad step three finding by defining a more detailed RFC, and incorporating those details into the hypothetical question. Plaintiff does not suggest that a hypothetical question must incorporate verbatim the broad terminology of the PRTF, but argues that it has been determined that a claimant has "moderate" deficiencies in concentration, persistence or pace, etc, the ALJ must craft a hypothetical question that encompasses, in concrete terms, the substance of that finding. According to plaintiff, courts have specifically found individuals that "often," which is

equivalent to "moderate," suffer deficiencies of concentration to be disabled. *See Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992). Plaintiff also points to *Bankston v. Commissioner of Social Security*, 127 F.Supp.2d 820, 826 (E.D. Mich. 2000), in which the Court indicated that "[a] reasonable interpretation of 20 C.F.R. § 404.1520a indicates that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."

Plaintiff contends that the ALJ's conclusion that plaintiff "is mentally limited to simple, routine and repetitive work activities performed in a stable environment" does not sufficiently account for the entire "moderate" limitation in the ability to maintain concentration, persistence and pace. Specifically, the ALJ does not adequately address the "moderate" limitation in the ability to maintain persistence and pace, which is the ability to complete a job on time. Further, the limitation to "simple, routine and repetitive work activities in a stable environment" is directly on point with the other cases cited by plaintiff that resulted in remand for further proceedings because of the hypothetical not properly accommodating for the moderate deficiency in the ability to maintain concentration, persistence and pace. For example, in *Benton v. Commissioner of Social Security*, 511 F.Supp.2d 842 (E.D. Mich. 2007), the court concluded that a limitation in a hypothetical to "simple, routine, repetitive tasks" was not adequate

to reflect a "moderate" deficiency in concentration, persistence, or pace.  The

Court held that such a limitation did not address both of the components of

concentration, persistence, or pace.  One of those components was the level of

sophistication of the task while the other component was the frequency of

performing the task.  *Id*. at 846.  Similarly, a "simple jobs" limitation in a

hypothetical was not detailed enough to encompass a "moderate deficiency in

concentration, persistence or pace" in *Alhin v. Commissioner of Social Security*,

2008 WL 2743954 (E.D. Mich. 2008).  According to plaintiff, the limitation to

"simple, routine and repetitive work activities" has been found time and time again

by this court to be an insufficient hypothetical limitation to fully and properly

incorporate moderate limitations in concentration, persistence and pace.  Thus,

plaintiff urges the Court to conclude that, because of the flawed hypothetical, the

VE's response cannot serve as substantial evidence to uphold the ALJ's

determination.

Plaintiff also contends that the ALJ failed to give appropriate controlling

weight to the opinion of his treating physician.  The ALJ discusses that plaintiff's

"primary treating [neurologist], Dr. Awerbuch provided a medical opinion as to

[his RFC] for work related activities on January 20, 2009."  (Tr. 36).  Dr.

Awerbuch, as the ALJ had noted, had been treating plaintiff from close in

proximity to his alleged onset date through well before the date last insured and

even continuing.  (Tr. 35-36, 252-292, 325-337, 338).  The ALJ discussed Dr.
Awerbuch's opinion as to what plaintiff was capable of doing.  (Tr. 36).  However,
according to plaintiff, given that plaintiff was considered a "younger individual"
utilizing the Medical-Vocational guidelines as of the date last insured, it is
particularly problematic that the most important opinion of Dr. Awerbuch on that
Medical Source Statement was not even addressed or mentioned in the May 2009
denial.  Dr. Awerbuch diagnosed plaintiff with bilateral carpal tunnel syndrome,
bilateral de Quervain's, bilateral knee degenerative joint disease, right shoulder
impingement, depression, gout, trigger finger, obstructive sleep apnea, and
mechanical neck and back pain.  (Tr. 338).  Dr. Awerbuch opined that these
conditions and their resulting limitations would likely disrupt a regular job
schedule with low physical demands at least 40 hours per month out of 160 hours.
(Tr. 338).  According to plaintiff, the ALJ never mentioned or addressed Dr.
Awerbuch's opinion with respect to the time off work plaintiff would require as a
result of his diagnosed severe impairments.

   C.   The Commissioner's Motion for Summary Judgment

       According to the Commissioner, the ALJ's findings as to plaintiff's social
functioning and ability to maintain concentration, persistence or pace were based
on the opinion of state agency reviewing psychologist Dr. DeLoach.  (Tr. 307-10,
321).  Dr. DeLoach opined that plaintiff had mild-to-moderate difficulties in social

interaction (which he rated overall as mild or mild-to-moderate); and that plaintiff had mild-to-moderate difficulties with concentration, persistence or pace (which he rated overall as moderate). (Tr. 307-08, 321). The Commissioner points out, however, that in his narrative conclusions, Dr. DeLoach indicated that while "sustained concentration and persistence are moderately limited" and "social interaction . . . are mildly to moderately reduced," plaintiff's "limitations do not appear to interfere with the potential for work activities that are simple in nature [and plaintiff] retains the capacity to perform simple tasks on a sustained basis." (Tr. 309). In other words, Dr. DeLoach found moderate limitations and concluded that those limitations produced only one restriction: simple work. Thus, the Commissioner concludes that there was no failure by the ALJ to accommodate limitations here. On the contrary, the ALJ explicitly relied on an uncontradicted medical opinion that plaintiff could do simple work despite moderate limitations in social functioning and maintaining concentration, persistence or pace.

The Commissioner also asserts that the ALJ reasonably arrived at plaintiff's physical RFC by considering all the relevant evidence. This included the objective medical facts, Dr. Awerbuch's treatment history with plaintiff, and Dr. Awerbuch's 2009 opinion. (Tr. 35-37). As a threshold matter, the ALJ noted that "there was no documented deterioration in [plaintiff's] condition since the" 2001 ALJ decision. (Tr. 35). Under AR 98-4(6), an ALJ who is adjudicating a

subsequent claim for benefits, made under the same title of the Act as the earlier claim, for a period not previously considered, must adopt the RFC finding from the final decision in the earlier claim, unless there is new and material evidence relating to the RFC determination.  AR 98-4(6); *Fuson v. Astrue*, 2008 WL 3833791, *7 (S.D. Ohio 2008), citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  Accordingly, the ALJ found a physical RFC which was essentially analogous to the one found by the ALJ in 2001, except with additional reaching, handling, fingering and environmental limitations.  (Tr. 33, 79).  The Commissioner contends that plaintiff has not shown that the medical evidence contradicts the ALJ's analysis or makes his RFC finding unreasonable.

Notably, the ALJ gave Dr. Awerbuch's opinion "reasonable weight" (Tr. 35), and in fact, the ALJ's RFC assessment closely correlates to Dr. Awerbuch's opinion.  Both agreed that plaintiff needed a sit/stand option; could stand/walk for two hours in a work day; could not work above his shoulders; could not do repetitive gripping, use power tools or drive.  (Tr. 33, 338).  The ALJ disagreed only on plaintiff's lifting capabilities, his ability to sit and his ability to work full-time.  (Tr. 33, 338).  The ALJ, though, found that Dr. Awerbuch did not explain these restrictions and that they were inconsistent with and not supported by objective medical evidence.  (Tr. 37).  According to the Commissioner, this was a reasonable critique because Dr. Awerbuch did not explain why plaintiff could not

sit for six hours at a time, for example.  Notably, no objective medical evidence

points to any sitting limitations.  The ALJ noted that in 2000, plaintiff had a

negative low back MRI (Tr. 35), and he also pointed out that EMG studies of

plaintiff's legs in 2000 and 2001 were negative.  (Tr. 35, 266, 268).  Further, the

ALJ pointed out that plaintiff denied leg pain in May 2006.  (Tr. 35, 277-78).  In

other words, the Commissioner contends that no objective medical evidence

pointed to any lower back impairment or any impairment that would prevent

plaintiff from sitting for six hours.  *See Price v. Comm'r of Soc. Sec.*, 342 Fed.

Appx. 172, 176 (6th Cir. 2009) ("because [the treating physician] failed to identify

objective medical findings to support his opinion [on a questionnaire] regarding

Price's impairments, the ALJ did not err in discounting his opinion").

Further, the Commissioner points out that Dr. Awerbuch never even

diagnosed a back impairment.  Rather, Dr. Awerbuch simply diagnosed "back

pain," which, according to the Commissioner, is not a proper diagnosis at all –

pain is a symptom, not a medical condition, and cannot be the basis for a finding

of disability.  (Tr. 280-89, 291).  *See* 20 C.F.R. §§ 404.1508 (impairment must be

established by medical evidence consisting of signs, symptoms and laboratory

findings, and not solely by claimant's statement of symptoms); 404.1528(a)

(claimant's own description of impairment is not enough to establish existence of

that impairment); *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995)

(ALJ reasonably discounted physician's opinion where claimant's subjective complaints unsupported by objective findings); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (opinion that does no more than repeat a claimant's allegations is not well-supported and does not merit controlling weight).

Similarly, the ALJ referenced plaintiff's May 2006 visit, during which his examination was largely normal.  (Tr. 35, 277-78).  According to the Commissioner, this is the only documented muscle testing in the record, and does not support a conclusion that plaintiff was unable to lift 10 pounds.  *See* 20 C.F.R. § 404.1527(d)(3)-(4); *P*rice, 342 Fed.Appx. at 176.  Further, the ALJ noted that plaintiff's treatment had generally been sporadic and conservative in nature, and in fact, most of plaintiff's treatment with Dr. Awerbuch after 2006 concerned his knees, and to a lesser extent his carpal tunnel syndrome, and nothing in those treatment record supports the notion that plaintiff could not work full time without interruption from his symptoms.  (Tr. 35-37).  The ALJ also noted that there was no medical evidence at all from 2002 through 2005 to corroborate Dr. Awerbuch's opinion, and this lack of evidence was not consistent with Dr. Awerbuch's opinion of disabling limitations.  (Tr. 35, 37).  For these reasons, the Commissioner asserts that the ALJ properly weighed Dr. Awerbuch's opinions.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

> "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

> If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis and Conclusions

> The first issue before the Court – whether the ALJ properly accounted for

plaintiff's moderate impairment of concentration, persistence, or pace in the hypothetical question using terms such as "simple," "routine," and "unskilled" – was ably analyzed in a recent decision authored by Magistrate Judge Laurie Michelson. *Taylor v. Comm'r*, 2011 WL 2682682 (E.D. Mich. 2011), adopted as the decision of the Court via order dated July 11, 2011. Judge Michelson began her analysis by noting that case law has resolved this issue in a variety of seemingly inconsistent ways. *Id*. at *6, n. 3 and n. 4 (collecting cases). Judge Michelson acknowledged that "[i]n analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task." *Id*. at *7. She also found, however, "that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Id*.

In undertaking this examination, Judge Michelson pointed to a case nearly identical to the one before her, and to the case presently before the undersigned: in a virtually identical case, another court in this District explained:

> Taken in isolation, the hypothetical limitations

> consisting of "[s]imple routine tasks in a low stress
> environment" and "minimal changes in the work place
> setting" might appear inadequate to account for
> "moderate" concentrational and pacing deficiencies.
> However, the record as a whole indicates that the
> hypothetical question and the ALJ's finding of
> "moderate" limitations findings are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. 2008).  Similar

to *Hess* and *Taylor*, the PRTF finds that plaintiff had moderate difficulties in

maintaining concentration, persistence, or pace.  (Dkt. 5-13, Pg ID 644).[1]  Also

similar to *Hess* and *Taylor*, the Mental Residual Functional Capacity Assessment

(Dkt. 5-13, Pg ID 648-649), found plaintiff to be moderately limited in six of the

20 categories; specifically, the ability to understand and remember detailed

instructions, the ability to carry out detailed instructions, the ability to maintain

attention and concentration for extended periods, the ability to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes, the

ability to respond appropriately to changes in the work setting, and the ability to

set realistic goals or make plans independently of others.  *Id*.  In *Hess* and *Taylor*,

the courts both concluded that because the ALJ relied on the opinions in the PRTF

to reach his conclusion that the plaintiff had moderate limitations in concentration,

persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate

---

[1] The PRTF was completed by a non-medical disability examiner, however, it was reviewed by a medical consultant, who agreed with the assessment.  (Dkt. 5-13, Pg ID 655-659).

Report and Recommendation
Cross-Motions for Summary Judgment
*Cole v. Comm'r*; Case No. 11-11936

conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis. *Taylor*, at *8.

Here, the PRTF also concluded that plaintiff could perform simple tasks on a sustained basis, despite his moderate impairments of the ability to maintain concentration and persistence and mild to moderate impairment in understanding and memory. (Dkt. 7-7, Pg ID 335). Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on the ultimate opinion that plaintiff was capable of working and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF, while ignoring others. *Hess*, at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion would amount to a distortion of the record."); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work."). Additionally, the ALJ did not simply limit plaintiff to "unskilled work." Rather, the ALJ accounted for the plaintiff's specific limitations in the PRTF by limiting plaintiff to "simple work tasks." *See Taylor*, at *9 (A reasonable interpretation of the opinions as a whole in the PRTF indicate

that the concentration limitations identified do not preclude consistent or sustained concentration in a stable, simple, and repetitive task setting).[2]

The undersigned is not persuaded by the case law cited by plaintiff suggesting that the ALJ's approach was incorrect.  In *Thomczek v. Chater*, 1996 WL 426247, at \*2-3 (E.D. Mich. 1996) the court found, in a rather conclusory fashion, that because the ALJ did not include the claimant's inability to concentrate in the hypothetical, the hypothetical was inaccurate.  Plaintiff offers no persuasive explanation for why *Thomczek* should control on this record.

Plaintiff also argues that *Bankston v. Comm'r of Soc. Security*, 127 F.Supp.2d 820 (E.D. Mich. 2000), found that "moderate" in the state agency physician's assessment is equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided.  The viability of the *Bankston* decision, has been repeatedly questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an administrative agency's construction of its own regulations. *Benton v. Comm'r of Social Security*, 511 F.Supp.2d 842, 847 (E.D. Mich. 2007);

---

[2] Just as in *Taylor*, this case is distinguishable from *Ealy v. Comm'r*, 594 F.3.d 504 (6th Cir. 2010) in which the Sixth Circuit found the ALJ's hypothetical to be deficient because it failed to include the limitation from the state DDS consultant that the plaintiff was only able to sustain attention to complete tasks in two hour segments over an eight hour day where speed was not critical. Here, just as *Taylor*, (and unlike the circumstances in *Ealy*) the consulting physician substantially reduced the significance of the PRTF limitations by concluding that the plaintiff could perform simple tasks on a sustained basis.

*Ogden v. Apfel*, Case (S.D. Ohio 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations). *Bankston* correctly notes that a "hypothetical question must consider the severity—including the degree and/or frequency—of the claimant's concentration problems." *Benton*, 511 F.Supp.2d at 847. However, the Benton court rejected the plaintiff's assertion that the ALJ must apply a "formulaic 50% reduction in concentration to Plaintiff based solely on his finding of a moderate limitation in concentration, persistence, and pace." *Id.* Since *Bankston*, § 404.1520a(c)(4) has been amended to encompass a five-level scale based on severity rather than frequency of the limitation, as set forth in the scale evaluated in *Bankston. Brewer v. Comm'r of Social Security*, 2008 WL 719228, *5 (E.D. Mich. 2008). This Court has previously concluded that to the extent *Bankston* was good law under the old version of § 404.1520a, it is simply inapplicable to the current regulation. *Id.* For this same reason, *Walker v. Sec'y of Health and Hum. Serv.*, 980 F.2d 1066 (6th Cir. 1992) is not controlling. *See Reynolds v. Comm'r*, 2011 WL 3897793 (E.D. Mich. 2011). In addition, *Benton* is not controlling this case because, unlike in *Benton*, a medical professional (not the ALJ) concluded that plaintiff had a moderate impairment in concentration, persistence or pace but still concluded that the claimant was capable of sustained work. *See e.g.*, *Hicks v. Comm'r*, 2011 WL 6000701 (E.D. Mich. 2011). For these reasons, the undersigned finds no basis to

conclude that the hypothetical question was flawed or unsupported by substantial evidence.

In the view of the undersigned, the ALJ's analysis of Dr. Awerbuch's opinion is supported by substantial evidence.  Significantly, in this case, the ALJ was bound by the prior RFC unless plaintiff showed a change in circumstance. Previously, plaintiff was determined to be entitled to a closed period of benefits because he had shown improvement as of June 20, 2001.  The earlier decision found plaintiff to be capable of a significant range of sedentary work activity which allowed him a sit/stand option and required him to lift no more than 10 pounds occasionally.  Thus, this RFC was the starting point for the ALJ.

As the Commissioner pointed out the ALJ essentially adopted the functional limitations set forth in Dr. Awerbuch's opinion except that he concluded that plaintiff could sit for six hours in an eight hour workday, as opposed to Dr. Awerbuch's finding that plaintiff could sit for *less* than six hours per day in an eight hour work day.  The undersigned agrees that nothing in Dr. Awerbuch's treatment records supports any limitation on sitting more than requiring a sit/stand option, which Dr. Awerbuch also approved and which the ALJ adopted.  While Dr. Awerbuch's records document complaints of back pain, there is little, if any, treatment for this pain and nothing in the records suggests that a sedentary occupation with a sit/stand option is insufficient to accommodate plaintiff's back

pain.

In addition, plaintiff points to nothing in Dr. Awerbuch's treatment records to support his conclusion that plaintiff would miss 40 hours per month of work due his conditions or that show a change in plaintiff's condition from the first RFC that would require plaintiff to miss 40 hours of work per month.  Indeed, the ALJ observed that the 2006 opinion of DDS medical consultant showed that plaintiff's limitations had not significantly changed from the first adjudication of plaintiff's Title II claim.  (Dkt. 7-2, Pg ID 57-58).  Thus, the ALJ specifically concluded that Dr. Awerbuch's opinion was only given weight to the extent it was consistent with the DDS findings and the medical evidence in the record since the first ALJ's decision.  The inability to work 40 hours out of every month is plainly not consistent with the DDS findings and plaintiff points to no particular medical evidence of record after the first decision in support of this limitation as opined by Dr. Awerbuch.  While plaintiff complains that the ALJ did not specifically mention why he did not adopt this particular limitation, the undersigned concludes that the ALJ provided sufficiently good reasons for not adopting all of Dr. Awerbuch's limitations and he sufficiently explained why he did not adopt Dr. Awerbuch's opinions to the extent they were inconsistent the DDS findings and the medical evidence of record since the first ALJ's decision was issued.

## IV.   RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

Report and Recommendation
Cross-Motions for Summary Judgment
*Cole v. Comm'r*; Case No. 11-11936

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 30, 2012              s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on August 30, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Richard J. Doud, Derri T. Thomas, AUSA, and the
Commissioner of Social Security.

                                   s/Darlene Chubb
                                   Judicial Assistant
                                   (810) 341-7850
                                   darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Cole v. Comm'r*; Case No. 11-11936